Well, good morning and welcome to the Ninth Circuit. I apologize that we brought the weather with us from the mainland, but hopefully it will be short-lived. We're grateful for everyone who's showing up today. Judge Bybee and Judge Forrest and I are very happy to be here in Hawaii and hearing these cases. We're grateful for the preparation that the attorneys have helped us with on them. We'll go ahead and just jump into the first case set for argument today, which is Miller v. Kaneshiro. That's case number 25-1994. We'll start with Mr. Kiyuchi. Kiyuchi Yes. Thank you. Good morning, Judge Nelson, Judge Bybee, Judge Forrest. My name is Keith Kiyuchi, and I represent Appellants Michael Miller, Eugene Simeona, and PJY Enterprises LLC. I'd like to reserve five minutes for rebuttal, if I could.  So, this case really comes down to primarily one issue, which is the statute of limitations. This is a seizure of 81 gaming machines that occurred in 2012 and 2013. The machines were kept, retained by the Honolulu Police Department. Some of the parties that operated the arcades from which the machines were seized were subject to a criminal proceeding that was subsequently So, counsel, I understand that you're right that the statute of limitations is the issue, and it seems to be when did the claims accrue. So, what, in your view, is the harm that you are seeking to recover for here? Well, we're seeking to recover the value of the machines. Right. And what's the claim then? There's a couple of claims. One was a claim for bailment, and there's several cases that allow bailment even with a governmental entity. And there was a claim simply for the city and county of Honolulu withholding the machines without authority to do so. Okay. So, when did they lack authority? After the Supreme Court decision, December 20th, 2021. You don't think that they lacked authority before that? Well, I've maintained they lacked authority before that, but then what happened is the Circuit Court in Honolulu ruled in our favor on the issue of whether they could retain the machines, and that was on the 77 machines versus these 81 machines. After that, on that appeal, the Intermediate Court of Appeals decision, which is June 20th, 2017, ruled in favor of the city and county of Honolulu. So, at that point, the law was based upon the ICA decision. The ICA decision said that under Chapter 712A of the Hawaii Revised Statutes that the city and county of Honolulu were not subject to any time deadlines. We filed an application for cert to the Hawaii Supreme Court. Hawaii Supreme Court accepted the review and reversed the Intermediate Court of Appeals. You had a legal ground to think that the withholding of the machines was improper even before that ruling. You just said a minute ago that you thought that it was improper. So, why didn't that trigger your obligation to, or why didn't that trigger the timing and your obligation to? Because our position is the ICA decision made that virtually impossible. So, if we had filed an action in State Circuit Court to recover the machines, that action in State Circuit Court would have been dismissed up until the December 20th, 2021. Couldn't you have filed it and then asked for a stay if you thought that you needed to have the decision from the Hawaii Supreme Court before you could actually proceed with the action? I don't think that would have been necessarily appropriate, but I can see where you would think that that would be a possibility. But doesn't that answer the question? If that's a possibility, why doesn't that answer the question? I mean, the problem with your argument, and the district court seemed to hit this on the head pretty clearly, is that under your theory, you could just wait for a case, you could file a test case, wait for that case, and then file subsequent claims. And I'm not aware, maybe you can direct me to, I'm well aware of a sort of a tolling of the statute of limitations during the pendency of a lawsuit, but I'm not particularly aware of a theory that would allow tolling where you haven't filed the lawsuit in the first place. Well, in this case, I think the equitable tolling would be applicable because the 77 machines were in the same bucket as really the 81 machines. The city has distinguished between the two, but it would have been fruitless for us to file any lawsuit because the litigation on the 77 machines was still pending. Council, it is not unknown, it's not unusual for lawyers to have to preserve objections. Sometimes you have to preserve objections during the trial, even though you know how the district judge is going to rule. You know, the district judge has said, yeah, council, I've heard that objection. Sometimes you have to come back and say, I'd like to note the standard objection, your honor, and say, objection noted, without having to give the detail. So it's just not unusual that you have to preserve an issue for somebody else. The 81 machines are not the 77 machines. I agree that they're not the 77 machines, but the issue is virtually the same issue. And the issue is really under 712A. It's not under HRPP 41E, which is the point that the district court kind of made, is the district court kind of made the point that 41E applied because they started the statute of limitations began to accrue when the criminal charges were dismissed. And we argued that that was error because the criminal charges really had nothing to do with seeking relief for violation of 712A. 41E is a distinctly different procedure. It's Hawaii Rules of Penal Procedure, and it specifically allows for the return of property, but a person aggrieved by an unlawful search and seizure over the deprivation of property. In this case, 41E was not applicable. If you look at the two cases I cited, Hawaii v. State and Lum v. Donahue, both of those cases deal with situations where there was no criminal proceedings. That was just a seizure, and 41E applied because the aggrieved party filed a motion under Rule 41E to get it back. So that's where we think the district court erred, because the district court really started to accrue from October 27, 2016, which is when the order was filed dismissing the criminal case. And our assertion is that was error, that they should not have accrued it from that date. They should have accrued it from the date. So in your view, what is the moment that the retention of the machines by the state was improper? December 20, 2021, which is a Supreme Court decision. No, but a few minutes ago, you said that even before that, the state holding those machines was improper. Yes. You believed that. So that's what I'm asking. What is the factual event that occurred that made you think that the state's retention of the machines was improper? There was no change in the factual event. I mean, they never applied under 7-7-12-8-4-4. I don't think you're tracking my question. So I'm trying to get at, like, you either think it's the moment that they took them, or you think that it's some other moment later after that, where something materially changed, where the state holding those machines was no longer lawful. What is the moment where you think that it became unlawful? Still think I've got to go back to the Supreme Court decision because the Supreme Court decision. I just don't understand that answer because you previously said that you thought it was unlawful even before then. Because we think it's unlawful, it doesn't mean that we would get the result we wanted when we filed. Again, counsel, sometimes you have to preserve your argument. I understand that. But in this case, specific case, and it was kind of unusual because the gap from the ICA decision to the Supreme Court decision was four years, which is an unusual period of time. But it's, I mean, it's really not that unusual. I mean, this happens all the time, where you might be, you know, you have multiple tiers of claims. They're all related to each other. And the way to do that is to ask the court to protect your rights and then ask the court to figure. I mean, you may well have been your right to say, hey, hold these cases to see how the Supreme Court rules. But you took a big risk by not even going into court at all. Well, one of the things we pointed out is we did attempt to get the machines back from the city after the criminal case was dismissed. And we were told- In a way that hurts you, I think, because that suggests you knew that you had a right to get them back, and they told you no. Well, that also shows that we took every avenue possible. I still don't think- Not every avenue possible. Well, I still don't think 41E was the applicable governing statute because 41E is a different situation than 712A. I think 712A here would be the governing statute and the governing rule. So I think that's what triggered it. But I think we have a right to assert the equitable tolling, in essence, because of the Supreme Court decision. Okay. Do you want to reserve? Yes, please. Thank you. Good morning, and may it please the court. Daniel Gluck, Deputy Corporation Counsel for Defendants Appellees. The plaintiffs argue that their claims either did not accrue or were told until 2021 when the Hawaii Supreme Court ruled in a different case involving 77 different gambling machines. That case simply does not apply here. That case dealt with the time frame in which the government could bring a forfeiture action. It didn't prevent the plaintiffs in this case. Does it even matter whether it applies here? I mean- No. If it did apply and it was on all four, you'd still be arguing, I think, that they had to preserve. That's exactly right, Your Honor. So here's the question that I have for you because they seem to have brought a- I mean, there's- that's why I was asking him what his claims were. His claims seem to be forfeiture in the sense that you had no right to take them in the first place. But there is this idea that more- I mean, there's a difference between, hey, we want you to return our property, and, hey, you've destroyed our property. Why- maybe you can help me out. Number one, did they raise a separate claim for just destruction of property separate from false retention or unlawful retention, I guess? Did they raise that claim? And then would those two claims have accrued on separate dates? I'm not sure whether they're making that on appeal, Your Honor. But- Did they make it below? I believe they brought a claim for negligence. So I think it's fair to say that that's encompassed there. But I- to answer Your Honor's other question, they'd have to accrue at the same time. The statute of limitations for damage to property and the taking of the property would have to start occurring at the same time. Otherwise, let's say that there's a situation in which someone takes my car. I would have a claim for conversion or some other common law claims. If I don't do anything about that, I can't wait until 20 years later when I notice that they've just parked my car in their yard and it's- Well, see, that's not entirely intuitive to me. Because they could say, hey, we're holding it for you. We've got it in a locked garage. And you're like, okay, I'm okay with that. I mean, I don't think you have the right, but I'm okay to let you have it because I know you're keeping it in safekeeping. And then 10 years later, they move it out of the locked garage and they take it and it's susceptible to being stolen and to get stolen. This seems to be a different claim to me. And so I guess I'm wondering why- what your argument is for why that wouldn't or couldn't accrue separately. Well, I think one reason, Your Honor, is that it puts the statute of limitations completely within the plaintiff's control in a case. And it's supposed to- statutes of limitations are supposed to be statutes of repose to give the defendant some security that after sufficient time that a claim won't be brought. Yeah, but I don't agree with that because, I mean, you're right as to the conversion. That may be true. But then if a defendant takes a separate action 10 years later, why isn't that a new action that could be subject to a new statute of limitations? Well, both Hawaii law and federal law are clear that you look at when an action- either when a plaintiff knew or reasonably should have known that some damage was done to their property, that some action was committed against their property. In effect, the Hawaii Supreme Court is clear. You know, there's case law saying, look, you really are looking at the property itself and whether some wrong was done to your property. So if there is an agreement that someone else hold my property, then there's no wrong being done because there's an agreement, there's a contract to hold the property. But in this case, you've got a claim that the government is not lawfully holding the property. And in fact, the plaintiff very clearly wanted the property back. And so that tort has been committed at that time. And so if you're also going to bring in a claim for damage to the property, it has to run at the same time. I mean, to follow up on that. So we're talking about the statute of limitations, as you rightly point out, for a tort claim. But, you know, under the scenario where somebody doesn't act timely, they think that their property is being held unlawfully, but they don't do anything about it. And say we're past the statute of limitations period, that wouldn't bar them from filing an action for return of the property, separate from a tort claim that's seeking other sort of damages, you know, loss of use or whatever. But just, like, return it. I think you're holding it and you don't have the ability to hold it. Now I want it back. That's the full scope of relief. You don't think that that would be barred by the statute of limitations, do you? So you're envisioning just a Rule 41 claim for return of the property. Yes. I think that's probably right, Your Honor. OK. So then if that's right, then Judge Nelson, I think, raises a good point of the tort injury has changed in character from you're holding it unlawfully to it's now gone. Right? Like the injury that I have suffered is different because in the first scenario, I can remedy that injury by getting the thing back. In the second scenario, I'm never getting it back because it's destroyed. So why hasn't my injury changed in character enough so that my tort injury, my ability to seek tort recovery, has changed such that we start over again with the limitations period? So one thing, when courts sometimes talk about continuing torts or something like that, it's because you can't measure what the damages are. Right? You don't know if there's some ongoing harm. You can't put a cap on the damages. But when it comes to a piece of property, you can. It's the value of the property. And you know that from the moment that it's taken. And so if going back to my car example, you know the value of the car, the total value of the car, it's going to decrease over time just because of time, right? These things lose value. And so saying that the statute of limitations would accrue, it doesn't fit the continuing tort theory that they may be changing. On the one hand, I agree with you. That's why I was kind of struggling with this question because your argument, your best argument seems to be, look, this is just a question of damages. These damages all accrue from the same action. Yes. But that's where I'm not sure that's totally true because you could look at this another way and say these are two separate actions. There's the taking of the property and then there's the destruction of the property. And those are two different actions. And why wouldn't we look at those as two different actions? If that's true, then governments are going to have a very, very difficult time disposing of property ever. Because as you know, governments take property all the time in conjunction with arrests and things. After some period of time, after the statutes of limitations have passed, after whatever period that the police departments have in their policies, the police want to get rid of the property. They don't want to hold on to it forever. But under the theory that you're suggesting, Judge Nelson, they could never get rid of the property. Well, they could. It would just reinstitute a new statute of limitations. Well, not only that, but if they kept it, every day that went by that would presumably lead to some tiny additional damage to the property just by the passage of time would again restart the statute of limitations. So does HPD have a policy on retention of, let's say, cars or bicycles? I believe they do, Your Honor. I don't think it's in the record on it. They sell them at auction? I believe there is some property that's sold at auction. Again, I'm not super familiar with it and it's not in the record on it. We don't know what happened to the... We just know they don't exist anymore. The machines? In the government's possession. Again, not in the record on appeal, but I can represent the machines are still in the government's possession, but I do not know the condition of them. Oh, they still are in the government's possession. I'm confused. Wouldn't you be under an obligation to turn them over now? Again, I think that the government is willing to turn them over. I don't know. I don't have the specifics of what happened between previous cases. So the claim here is just we want the value of it because they're... That's correct, Your Honor. But presumably, whatever administrative regulation or if there's a statute, you could sell them at auction, for example. If they'd been... They'd be deemed abandoned property at some point and the police could simply, if they wished, could either destroy them or... So they didn't have to park them in their warehouse or they could sell them back to the public at auction. Yes, Your Honor. I'm not familiar with this type of procedure. So is it true under Hawaii law that there is a period of abandonment that if we haven't reached that point, then the property owner could at any point in time go through the mechanism of trying to get return of the property and we'll see how that sorts out. But then there is sort of a time period where if you haven't made such a claim, we deem you abandoned and then you are right to terminate it. We can do, as the state, we can do whatever we want to dispose of this. That's a great question, Judge Forrest. I'm sorry. I don't know the answer. I assume that that's correct, but I don't know. But they haven't done that, is your point? I think that there had been some communications in the past, but I'm not, I don't know what the current state of those discussions is. But that's not part of this litigation. Correct, Your Honor. Yeah, this, again, this is just entirely a damages case for the value of the machines for which the statute of limitations has run. So, I mean, the reason that the plaintiffs think that there is something the matter with the machines that the state was holding is that I think the city, I keep saying the states, the city, the city issued them notice saying that they had been destroyed, right? So, so I don't know that there was any notice. There's certainly nothing in the record about notice. And in fact, you know, the appellants had mentioned July 22 being informed. There's nothing in the record. There's no declaration or exhibit of any kind in the record to satisfy that date. There's, there is evidence in the record of an inspection in 2024 that happens. But I don't know that there was a notice, a piece of paper that was issued. I think this comes from their brief. They said on July 15, 2022, the city informed them that, I see, I misread that. I thought they were gone, but it says that the 81 machines were inoperable. Correct. And that citation in the brief is to the complaint. And as the court is aware, that's not evidence. It's just an allegation in the complaint. All right. If the court has no further questions. All right. Thank you very much. Oh, I guess just to wrap up that we asked that the district court order be upheld. Thank you. I'm going to respectfully disagree with opposing counsel. There was specifically a representation made by the city court counsel's office. It's referenced in page five of my opening brief that the machines were, the 81 machines were destroyed. There was a, can you, is that just in your complaint? No, it's not. It's, it's also referenced in my declaration. It's also referenced in Mr. Yoshimura's declaration. There's a specific reference in Mr. Yoshimura's declaration that an inspection of the machines occurred on September 27th, 2024, and only 56 of the 81 machines were ready for inspection and all but one of the machines didn't work. But there was a representation made at the time of a July 2022 inspection that the 81 machines were destroyed. That's in the complaint. That's in my declaration. Well, and maybe it doesn't matter. I mean, inoperable versus destroyed. What was it? Was it, were they inoperable or were they destroyed? No, the representation in 20, July 2022 is they were destroyed. Then all of a sudden the city found the machines and inspection was conducted on September 27th, 2024, but they only produced 56 of the 81 machines. Of the 56 machines they produced, all but one did not work. Can you point me to the record where it talks, because I'm looking at your brief and your brief just says July 15th, on page eight of your brief, it says July 15th, 2022, when they were informed by the city that the 81 PDS machines had been destroyed, but there's no citation to the record. You, paragraph 13 of the Yoshimura declaration says that you and Mr. Yoshimura went there on the date you referred to, which was September 27th, 2024. 56 of the 81 machines were ready for inspection. All but one of the machines didn't work. The machines didn't work for one of four reasons. Wouldn't turn on, turned on, then shut down, screen damage or termite damage to cabinet. Right, that's correct. That's what happened. So I don't even know at this point whether the balance of the 81 machines even, you know, were destroyed or existed. So here, I mean, I'd posited, you heard my questions to help say, here's the problem in your case. Those damages, I mean, I, I, I, it almost seems like those are just direct damages from them unlawfully holding them at some point. So, I mean, it's not like they were keeping these they didn't tell you, hey, we're keeping this in a seal tight, you know, position. I mean, they were just being, you didn't know, presumably. And I mean, it's not unforeseeable that over eight years, you know, there's going to be damage to machines that are just being held in their custody. So that's why this one does seem to be more like a damages claim that relates to the unlawful retention as opposed to some other claim where they took some extra action that would have re-triggered. And I guess you're not really even arguing that, are you? No, we're not arguing that because, I mean, we don't know where the machines were held during that period of time, but there was an inordinate period of time when the machines were being held by HPD. I mean, the record doesn't show this, but they were held actually in two different warehouses. There was an inspection conducted, like I said, in 2022. That inspection was conducted after the Supreme Court case. But the damages here, I think that's the problem for you. The damages all seem to stem ultimately from the unlawful retention. And so then we get back to the series of questions of when did the unlawful retention occur? You, as Judge Forrest has pointed out, have suggested that that actually did begin sometime before the Supreme Court issued the ALMS decision, but you've not been specific about when. Well, they seized the machines on December 13, 2012 and February 14, 2012. Right, but you don't believe that. Well, do you believe that that's when your claim started accruing? No. Yeah. No. And do you believe that they started accruing in 2016 once they dropped the criminal charges? No, the reason I don't believe that is because 41E is a different remedy than 712A. And they never had the authority to hold it under 712A. Our position is under 712A, there was no case law under 712A until the Intermediate Court of Appeals decided that, the Supreme Court reversed that. So that's basically our position. So, Mr. Kuji, let's see if I've got my dates right. The District Court says that the clock starts ticking on October 27, 2016. Right. If you had a six-year statute of limitations, then you had to file it before October 27 to October 26, 2022. Correct. You file in November of 2022. Correct. Okay. And the Yoshimura Declaration says that you inspected those machines in September of 2024. But there was also initial inspection. 2024, got it. 2022 is when we inspected the 77 machines. We're told the 81 machines are destroyed. There's a subsequent inspection in 2024 of the 81 machines. Okay. All right. Okay. I got it. I thought there was a gap there where you could have still filed, but I see now that would not have been timely. Okay. All right. Thank you very much for your attention. Thank you. Thank you to both counsel for your arguments in the case. The case is now submitted.
judges: BYBEE, NELSON, FORREST